UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RICHARD HEIDEN, M.D.,

                    Plaintiff,

v.

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION,
PHYSICIAN AFFILIATE GROUP OF
NEW YORK, P.C., and ALAN KANTOR,
M.D.

                    Defendants.
-------------------------------------------------------X

Index No.:

**COMPLAINT**

**Jury Trial Demanded**

      Plaintiff Richard Heiden, M.D. ("Dr. Heiden" or "Plaintiff"), by and through his undersigned counsel, Wigdor LLP, as and for his Complaint against Defendants New York City Health and Hospitals Corporation ("NYC Health + Hospitals," or the "Corporation"), Physician Affiliate Group of New York, P.C. ("PAGNY" or the "Group"), and Alan Kantor, M.D. (collectively, the "Defendants"), hereby alleges as follows:

## PRELIMINARY STATEMENT

      1.     Dr. Heiden is an accomplished radiologist who was prepared to join the front-line of medical professionals battling the COVID-19 pandemic raging through New York City in the Spring of 2020.  He was willing to do his part but needed a simple, reasonable medical accommodation: permission to perform his job remotely from home.  The accommodation was necessary because Dr. Heiden's autoimmune disorder made it much more dangerous for him to work on site at the Hospital.

      2.     There would be no burden on the Hospital.  As Dr. Heiden explained to his boss, Dr. Kantor, he could perform the essential functions of his job from home and, in fact, a number

of prominent medical institutions around the country had instituted work-from-home policies for radiologists just like him. To lighten the load, Dr Heiden even offered to pay for any costs associated with his remote work.

3. Defendants never considered Dr. Heiden's request. Rather, Dr. Kantor presented Dr. Heiden with a Hobson's Choice: he could either resign or Dr. Kantor would fire him for "cause" and report him to professional licensing authorities, thus effectively ending Dr. Heiden's long career. Dr. Kantor also warned Dr. Heiden not to assert his legal rights. According to Dr. Kantor, if Dr. Heiden "pursued this legally," Dr. Kantor would have clinical staff testify against Dr. Heiden. Having no choice, Dr. Heiden was forced to resign.

4. Defendants' conduct violated the anti-discrimination and anti-retaliation provisions of the Americans with Disabilities Act, 42 U.S.C. §§12101 *et. seq.* ("ADA"); the New York State Human Rights Law, N.Y. Exec. Law § 298, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* ("NYCHRL").

## ADMINISTRATIVE PREREQUISITES

5. Pursuant to NYCHRL § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten days of its filing, thereby satisfying the notice requirements of this action.

6. On October 6, 2020, Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADA. On November 17, 2020, the EEOC subsequently issued Plaintiff a Notice of Right to Sue ("Right to Sue").

7. Plaintiff brings his complaint within 90 days of the issuance of the Right to Sue.

8. Plaintiff has complied with any and all other prerequisites to filing this action.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

11. Plaintiff Richard Heiden, M.D., is a resident of the State of New York and a former employee of NYC Health + Hospitals and PAGNY.

12. Defendant NYC Health + Hospitals is a domestic not-for-profit corporation organized under the laws of the State of New York, with a principal place of business located at 125 Worth Street, New York, New York 10029.  At all relevant times, NYC Health + Hospitals was an "employer" within the meaning of all applicable statutes.

13. Defendant PAGNY is a domestic professional corporation organized under the laws of the State of New York, with a principal place of business located at 55 West 125th Street, New York, New York 10029.  At all relevant times, PAGNY was an "employer" within the meaning of all applicable statutes.

14. Defendant Alan Kantor, M.D., is the Chair of the Lincoln Hospital's Radiology Department and Plaintiff's direct supervisor.  At all relevant times, Dr. Kantor was an "employer" and/or "aider and abettor" within the meaning of all applicable statutes.

**FACTUAL ALLEGATIONS**

I.     **Background**

15.    Dr. Heiden is an accomplished radiologist with over 30 years of experience in the field.

16.    Dr. Heiden obtained his medical degree from SUNY Downstate College of Medicine in 1983 and started a radiology residency in 1986 after working as a general medical practitioner.

17.    In 2002, Dr. Heiden became the Chairman of Radiology for Interfaith Medical Center in Brooklyn, where he had worked as the Associate Chairman from 1998 to 2002 and as an attending radiologist from 1994 to 1998.

18.    Dr. Heiden also worked in several other local area hospitals, including as Chairman of Radiology at Mary Immaculate Hospital, and for over 20 years operated a part-time practice working directly with imaging centers and clinics.

19.    From 2012 to 2019, Dr. Heiden worked for NYC Health + Hospitals and PAGNY in the Radiology Department at Coney Island Hospital.

20.    NYC Health + Hospitals is the largest public health system in the United States and PAGNY is responsible for clinical staffing at Coney Island Hospital.

21.    While at Coney Island Hospital, Dr. Heiden consistently received excellent semi-annual evaluation ratings.

22.    In mid-2019, Dr. Heiden obtained a position as a full-time radiologist for Lincoln Hospital, which is also part of NYC Health + Hospitals and staffed by PAGNY.

23.    On October 7, 2019, Dr. Heiden started at Lincoln Hospital.

## II.     Dr. Heiden's Reasonable Accommodation Request

24.     In early 2020, New York City was declared a global epicenter for the COVID-19 pandemic.

25.     Dr. Heiden became increasingly worried about the danger of working on-site at the Hospital because he suffered from an autoimmune disorder, ulcerative colitis.

26.     On March 23, 2020, Dr. Heiden requested a reasonable accommodation.

27.     In a letter to Dr. Kantor, Chair of the Lincoln Hospital's Radiology Department, Dr. Heiden explained,

> I have an immune disorder (among other health issues) and given the current COVID-19 pandemic, continuing to work on site at Lincoln Hospital, means that I am now a disabled individual. I can continue to perform the essential functions of my job with an accommodation. The accommodation I am seeking is to work from home.

28.     Dr. Heiden further explained that "[e]xcept for fluoroscopy, my job can be done entirely at home with a PACS monitor, a high-speed internet connection and a telephone."

29.     Indeed, Dr. Heiden cited several prominent institutions such as Emory, NYU Langone, the University of Wisconsin, Northwell and Stony Brook that instituted remote work programs for radiologists such as Dr. Heiden because of the benefits to public health during the pandemic.

30.     Dr. Heiden even offered to pay "whatever costs are necessary to facilitate my remote work set up."

31.     While Dr. Kantor claimed that he passed along Dr. Heiden's accommodation request to Human Resources ("HR"), no one in HR ever reached out to Dr. Heiden to consider the accommodation request.

## III.    **Defendants Fire Dr. Heiden**

32.    Dr. Kantor responded to the accommodation request by forcing Dr. Heiden to resign.

33.    On March 24, 2020, the day after Dr. Heiden asked to be accommodated, Dr. Kantor presented Dr. Heiden with what purported to be a six-month performance review known as a Focused Professional Practice Evaluation ("FPPE").

34.    In fact, Dr. Heiden had not yet completed his first six months at the Hospital. To make the FPPE appear legitimate, however, Dr. Kantor falsely wrote that Dr. Heiden started working on September 1, 2019 (even though Dr. Heiden started on October 7, 2019).[1]

35.    Dr. Kantor claimed that Dr. Heiden was a poor performer. According to Dr. Kantor, Dr. Heiden lacked a sufficient knowledge base to perform his job and was accurate in his assessments only 93.8% of the time, below the Hospital's 97% threshold.

36.    These allegations were false or, at the very least, misleading.

37.    As explained above, Dr. Heiden is an accomplished radiologist who, among other things, chaired the radiology departments for two major urban hospitals.

38.    Thus, any suggestion that Dr. Heiden lacked sufficient expertise was plainly bogus.

39.    To the contrary, Dr. Heiden worked at Coney Island Hospital (another PAGNY hospital) for seven years before accepting the position at Lincoln Hospital. He consistently received the highest performance ratings, including in late July 2019, only months before he

---

[1]    The FPPE is largely illegible, suggesting that Dr. Kantor wrote in haste immediately upon learning that Dr. Heiden had requested a reasonable accommodation.

started at Lincoln Hospital.  According to Dr. Kantor, however, Dr. Heiden suddenly – and coincidently – forgot how to do his job when he sought an accommodation

40. Moreover, Dr. Kantor falsely reported Dr. Heiden's accuracy rate.

41. Dr. Kantor failed to include a single instance of any alleged inaccuracy in the written FPPE, making it impossible for Dr. Heiden to respond to the sham criticism.

42. Dr. Heiden had to subsequently ask for a list of the alleged identified errors.

43. Dr. Kantor resisted, claiming that there "was not enough time" for Dr. Heiden to remedy these mysterious deficiencies.

44. Dr. Kantor predicted – without explanation – that Dr. Heiden would not be able to remedy these undisclosed issues before Dr. Heiden's follow-up three-month review.

45. Dr. Kantor nonetheless grudgingly agreed to provide Dr. Heiden with specific information at a later date.

46. On Wednesday, March 25, 2020, Dr. Kantor provided Dr. Heiden with a spreadsheet listing the cases where he purportedly did not agree with Dr. Heiden's assessment.[2]

47. As expected, many of these alleged mistakes were either not errors at all or were merely incidental.  Overall, Dr. Heiden's accuracy rate was 98% – above the Hospital's performance threshold.

48. Undeterred, on March 26, 2020, Dr. Kantor demanded that Dr. Heiden resign.  If not, he would fire Dr. Heiden for "cause" and report Dr. Heiden to the New York State Office of

---

[2] Dr. Kantor apparently created this list only <u>after</u> Dr. Heiden challenged the bogus appraisal.  Otherwise, Dr. Kantor would have been prepared to provide the particulars during the initial FPPE review.

Professional Medical Conduct (OPMC), thus threatening Dr. Heiden's medical license and livelihood.[3]

49.     On the other hand, if Dr. Heiden resigned "immediately," – and thus without challenging Dr. Kantor's bogus criticisms – Dr. Kantor would, among other things, either say nothing negative to prospective employers or perhaps even report that Dr. Heiden was competent at reading ultra-sounds and x-rays.

50.     Dr. Heiden, through his wife who is an attorney, protested that Dr. Kantor was seeking to terminate Dr. Heiden's employment only after Dr. Heiden sought an accommodation.

51.     Dr. Kantor claimed that the timing was merely "coincidental," and that if Dr. Heiden "pursued this legally," he (Dr. Kantor) would have clinical staff testify against Dr. Heiden.

52.     Having no choice, on April 2, 2020, Dr. Heiden was forced to state that he had resigned.

53.     On June 27, 2020, Dr. Yashwant Patel, Associate Chairman of Radiology at Coney Island Hospital, another NYC Health + Hospitals and PAGNY facility, also asked Dr. Heiden to resign without explanation in lieu of renewing his privileges at the hospital.

---

[3]     Dr. Kantor's threat to report Dr. Heiden to OPMC is memorialized in a March 31, 2020, email from PAGNY HR Business Partner Shaun Ravenel. The email states: "If Dr. Heiden resigns after April 1st his benefits will continue until the end of April and he will not be reported to OPMC". Dr. Kantor's threat is wholly improper – and likely illegal – because OPMC reporting is typically mandatory even where a physician has resigned. See N.Y. Pub. Health Law § 2803-e (stating that hospitals "shall" report instances of "professional misconduct" within thirty days of "obtaining knowledge" of such "professional misconduct" or termination of employment); id. (requiring reporting even where a physician has "resign[ed] . . . to avoid imposition of disciplinary measures"). That neither Dr. Kantor nor anyone else at the Hospital reported Dr. Heiden for professional misconduct establishes that Dr. Kantor's threat was baseless and designed to intimidate Dr. Heiden for seeking an accommodation. Indeed, mere errors in radiology reporting hardly constitute professional misconduct. See Adrian P. Brady, *Error and discrepancy in radiology: inevitable or avoidable*, Insights Imaging (2017).

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of ADA)**
**(Against NYC Health + Hospitals and PAGNY)**

54. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

55. Defendants discriminated against Plaintiff on the basis of his disability in violation of ADA by, *inter alia*, denying him equal terms and conditions of employment, and failing to provide a reasonable accommodation.

56. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

57. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which he is entitled to an award of damages.

58. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of ADA, for which Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of ADA)**
**(Against NYC Health + Hospitals and PAGNY)**

59. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

60. Defendants retaliated against Plaintiff for engaging in protected activities in violation of the ADA.

61. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

62. As a direct and proximate result of Defendants' unlawful conduct in violation, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which he is entitled to an award of damages.

63. Defendants' unlawful and retaliatory actions constitute malicious, willful and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION
**(Discrimination in Violation of the NYSHRL)**
**(Against All Defendants)**

64. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

65. Defendants discriminated against Plaintiff on the basis of his disability in violation of NYSHRL by, *inter alia*, denying him equal terms and conditions of employment, and failing to provide a reasonable accommodation.

66. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

67. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which he is entitled to an award of damages.

68. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
### (Against All Defendants)

69. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

70. Defendants retaliated against Plaintiff for engaging in protected activities in violation of the NYSHRL.

71. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

72. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which he is entitled to an award of damages.

73. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

### FIFTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
### (Against All Defendants)

74. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

75. Defendants discriminated against Plaintiff on the basis of his disability in violation of the NYCHRL by, *inter alia*, denying him equal terms and conditions of employment, and failing to provide a reasonable accommodation.

76. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

77. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which he is entitled to an award of damages.

78. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

### SIXTH CAUSE OF ACTION
**(Retaliation in Violation of the NYCHRL)**
**(Against All Defendants)**

79. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

80. Defendants retaliated against Plaintiff for engaging in protected activities in violation of the NYCHRL.

81. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of damages.

82. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which he is entitled to an award of damages.

83. Defendants' unlawful and retaliatory actions constitute malicious, willful and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate federal, state and city laws;

B. An injunction and order permanently restraining Defendants from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

D. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his emotional distress;

E. An award of punitive damages, in an amount to be determined at trial;

F. Prejudgment interest on all amounts due;

G. An award of Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

H. Such other and further relief to which Plaintiff is entitled, and/or as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: December 7, 2020
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
    Valdi Licul
    Bryan L. Arbeit

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
barbeit@wigdorlaw.com

*Counsel for Plaintiff*